Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
Seth H. Ostrow (*pro hac vice* to be filed)
Email: sho@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff Tissue Anchor Innovations, LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tissue Anchor Innovations, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Fountain Valley Regional Hospital and Medical Center, Los Alamitos Medical Center, and Boston Scientific Corporation, <br><br> Defendants. | Case No. 8:19-cv-791 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Tissue Anchor Innovations, LLC, ("TAI"), by and through its undersigned counsel, brings this action against Defendants Fountain Valley Regional Hospital and Medical Center ("FVRH"), Los Alamitos Medical Center ("LAMC"), and Boston Scientific Corporation ("Boston Scientific") (FVRH, LAMC, and Boston Scientific together, "Defendants") and hereby alleges as follows:

## THE PARTIES

1. TAI is a limited liability company organized and existing under the laws of Virginia, having a place of business at 4445 Corporation Lane Suite 264, Virginia Beach, VA 23462. TAI is the exclusive licensee of a family of patents relating to tissue anchoring systems, including U.S. Patent No. 6,506,190 (the "'190 Patent" or "Asserted Patent").

2. Upon information and belief, Defendant Fountain Valley Regional Hospital and Medical Center ("FVRH") is a California corporation with its principal place of business at 17100 Euclid St., Fountain Valley, CA 92708.

3. Upon information and belief, Defendant Los Alamitos Medical Center ("LAMC") is a California corporation with its principal place of business at 3751 Katella Avenue, Los Alamitos, CA 90720.

4. Upon information and belief, Defendant Boston Scientific Corporation ("Boston Scientific") is a Delaware corporation with its principal place of business at 300 Boston Scientific Way, Marlborough, MA 01752-1234.

## JURISDICTION AND VENUE

5. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*. This Court accordingly has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

6. This Court has jurisdiction over FVRH because FVRH is incorporated in the State of California and this District, does business in the State of California and this District, maintains its principal place of business in the State of California and in this District, contracts to supply goods or services within the State of

California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District, and/or commits and has committed acts of patent infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.

7. This Court has jurisdiction over LAMC because LAMC is incorporated in the State of California and this District, does business in the State of California and this District, maintains its principal place of business in the State of California and in this District, contracts to supply goods or services within the State of California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District, and/or commits and has committed acts of patent infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.

8. This Court has jurisdiction over Boston Scientific because Boston Scientific does business in the State of California and this District, operates several facilities within the State of California and in this District (including, for example, facilities in Valencia, California), contracts to supply goods or services within the State of California and this District (including contracting with FVRH and LAMC and other hospitals or distributors in this District), has continuous and systematic business contacts within the State of California and this District (including business contacts with FVRH and LAMC and other hospitals or distributors in this District), derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District (including from FVRH and

1  LAMC and other hospitals or distributors in this District), and/or commits and has
2  committed acts of patent infringement either within the State of California and this
3  District (including through its sales or offers to sell to FVRH and LAMC and other
4  hospitals or distributors in this District), or outside the State of California and this
5  District with a reasonable expectation that such acts would have consequences within
6  the State of California and this District.

7        9.    Venue is proper in this judicial district pursuant to 28 U.S.C.
8  §§ 1391(b), 1391(c), 1400(b), and 1404(a).

## FACTS

### *The Asserted Patent*

10. On January 17, 2000, the '190 Patent, entitled "Tissue Anchor System," a copy of which is attached hereto as Exhibit A, was duly and legally issued by the United States Patent and Trademark Office to Dr. Christopher J. Walshe ("Dr. Walshe") as the sole inventor.

11. The '190 Patent discloses a tissue-anchoring system including a tissue-anchoring device and tissue anchors designed to be used in the treatment of urinary incontinence and other conditions.

12. Dr. Walshe is a medical doctor specializing in female pelvic medicine and reconstructive surgery, having a principal place of business at 5838 Harbour View Blvd # 290, Suffolk, VA 23435. Dr. Walshe is the owner of the '190 Patent.

13. TAI holds all substantial rights to the '190 Patent, which includes the exclusive right to grant sublicenses to the '190 Patent and to sue for and collect past, present, and future damages or to seek and obtain injunctive or any other relief for infringement of the '190 Patent against any third-party infringers.

### *Defendants' Infringing Systems and Services*

14. "Customers" refers to any person or entity Boston Scientific sells its products to directly, such as distributors, hospitals, and/or medical professionals, and indirectly, such as patients who purchase the Accused Systems in conjunction with a

procedure (including purchase through the patients' insurer(s)) from a hospital, doctor, or other medical facility (including but not limited to FVRH and LAMC), and to any person or entity who uses or sells Boston Scientific's products, such as hospitals, medical centers, research facilities, doctors, and other medical professionals, including but not limited to patients undergoing a procedure to implant the Accused Systems (defined below), Defendants FVRH and LAMC and other hospitals and/or medical centers, and medical professionals performing procedures using the Accused Systems, including but not limited to those at FVRH and/or LAMC.

15. Boston Scientific makes, uses, sells, and/or offers to sell medical devices that address women's health concerns, which include the Solyx Single-Incision Sling System, including but not limited to the Solyx SIS System, Solyx Blue Single Incision Sling System, and any prior versions of these products that operate in substantially the same way (the "Accused Systems"), which is marketed and/or used for treating at least stress urinary incontinence, and includes the components of at least a delivery device and mesh assembly.[1]

16. Upon information and belief, Boston Scientific, either directly or through distributors, provides the Accused Systems for use by medical professionals, practices, and hospitals throughout the United States, including the state of California and this District. For example, Boston Scientific provides the Accused Systems to FVRH and LAMC, located within this District, which FVRH and LAMC use to infringe the '190 Patent, including through use by medical professionals with privileges at these hospitals and sales to patients, *infra*.

---

[1] TAI notes that on April 16, 2019, the Food and Drug Administration ("FDA") required manufacturers to cease selling mesh products for pelvic organ prolapse. *See, e.g.,* https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/UCM636114.htm. This order does not include mesh products indicated for use in stress urinary incontinence, for which the Accused Systems are marketed. *See, e.g., id.*, http://news.bostonscientific.com/fda-decision-on-transvaginal-mesh-for-POP (noting that sales of other products will stop, but noting that the FDA decision does not affect stress urinary incontinence products, such as the Accused Systems), Exs. C and D. Thus, the FDA's recent decision does not alter the fact that the Accused Systems have and continue to infringe the '190 Patent.

1  17. The Accused Systems are made or especially adapted for infringement of the '190 Patent because they include the features detailed in Exhibit B which cause the Accused Systems to infringe the '190 Patent.

18. Upon information and belief, the Accused Systems are not a staple article or commodity of commerce suitable for substantial non-infringing use because the Accused Systems and components thereof are specifically designed to provide infringing devices and to perform infringing procedures, such as detailed in Exhibit B. The Accused Systems are provided to Customers in a manner that is capable of infringement and is intended for use that would infringe the '190 Patent.

19. Boston Scientific instructs Customers regarding the infringing use of the Accused Systems through instructions for use ("IFU"), materials provided with the product (such as the materials attached hereto as Exhibit C), its website (https://www.bostonscientific.com/content/gwc/en-US/products/mid-urethral-slings/solyx.html, the content of which is incorporated herein by reference), marketing materials (such as the brochure attached hereto as Exhibit D), and its customer support services (https://www.bostonscientific.com/en-US/customer-service.html).

20. Additionally, on information and belief, Boston Scientific responds to inquiries regarding the use of the Accused Systems through a form available at https://www.bostonscientific.com/en-US/contact-us-email2.html. On information and belief, Boston Scientific's responses to such inquiries includes instructions and guidance on how to use the Accused Systems to infringe the '190 Patent.

21. On information and belief, Defendants FVRH and LAMC, including through medical professionals employed by Defendants FVRH and LAMC or medical professionals with surgical privileges at their hospitals, infringe the '190 Patent by making the Accused Systems available for use at their facilities, including but not limited to doctors and medical professionals (such as employees of FVRH and/or LAMC and those to whom FVRH and/or LAMC have granted medical

privileges through their medical staff and privileges application processes) performing procedures to implant the Accused Systems in patients, as described in Exhibit B, and in selling the Accused Systems to patients as a part of the patient's bill for the procedure to implant the Accused Systems, *infra*.

22. A general, exemplary description of how the Accused Systems infringe a sample claim of the Asserted Patent is attached as Exhibit B, which is incorporated by reference herein in its entirety.

### *Boston Scientific's Knowledge of the Asserted Patent*

23. On March 2, 2017, Plaintiff, through its counsel, formally notified Boston Scientific General Counsel Timothy A. Pratt and President of Urology and Pelvic Health David A. Pierce, via FedEx letter, that products made, used, sold, or offered for sale by Boston Scientific, including the Accused Systems, infringed the Asserted Patent, including a chart detailing the infringement of an exemplary claim. Upon information and belief, Boston Scientific received the March 2, 2017, letter on or about March 3, 2017.

24. Boston Scientific was aware of the '190 Patent long before the 2017 communication and before it began making, using, selling, and offering for sale the Accused Systems.

25. On or about September 9, 2004, counsel for Dr. Walshe identified the '190 Patent to Chris Barron, Director of Marketing at Boston Scientific, for potential acquisition of the '190 Patent, including attaching a copy of the patent to an email after leaving a voicemail regarding the '190 Patent.

26. On or about November 2, 2004, Chris Barron confirmed receipt of the '190 Patent and that he was discussing the '190 Patent with the legal team and the research and development team at Boston Scientific.

27. On or about December 29, 2004, Kurt Lockwood, Senior Patent Counsel at Boston Scientific, provided a confidentiality agreement to counsel for Dr. Walshe, proposing a structure to maintain the confidentiality of information that Dr.

1  Walshe disclosed to Boston Scientific for purposes of their evaluation of the '190
2  Patent.
3         28.    On or about January 13, 2005, Boston Scientific, through Tim O'Shea,
4  the Vice President of Business Development, provided a proposal to purchase an
5  assignment of the '190 Patent, including all related U.S. and foreign patent
6  applications. At that time, Boston Scientific did not yet manufacture the Accused
7  Systems. No agreement to assign the '190 Patent was reached.
8         29.    Based on the 2005 proposal, on information and belief, Boston
9  Scientific was familiar with the claims of the '190 Patent and the types of products it
10 would cover. On information and belief, Boston Scientific conducted some due
11 diligence to evaluate the '190 Patent before offering such a proposal regarding the
12 '190 Patent, as indicated by Chris Barron's statement that he was discussing a path
13 for the '190 Patent at Boston Scientific with the legal team and research and
14 development team.
15        30.    Counsel for Dr. Walshe was also in contact with David Robertson,
16 Technology Assessment Manager at Boston Scientific, regarding the '190 Patent on
17 or about July 24, 2009.
18        31.    Boston Scientific had further communications with counsel for Dr.
19 Walshe after 2009, including in November 2011.

## COUNT 1 – BOSTON SCIENTIFIC'S INFRINGEMENT OF THE '190 PATENT

22        32.    Plaintiff repeats the allegations contained in the preceding paragraphs 1
23 through 30 as though fully set forth herein.
24        33.    Upon information and belief, Boston Scientific has in the past infringed
25 and continues to infringe the '190 Patent, directly and/or by inducement of
26 infringement and/or by contributory infringement, by making, using, selling and/or
27 offering to sell, in this judicial district, throughout the United States, and elsewhere,
28 the Accused Systems, which embody the patented inventions of the '190 Patent.

34. Pursuant to 35 U.S.C. § 271(a), Boston Scientific is liable for direct infringement of the '190 Patent by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer to sell the Accused Systems in the United States. Boston Scientific's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of the Accused Systems that embody the patented invention of the '190 Patent. Boston Scientific has contracted to sell and has sold the Accused Systems (in configurations generally similar to the allegations previously made herein) to, *inter alia*, Customers. Boston Scientific continues to make, use, sell, offer to sell, and/or import Accused Systems despite having knowledge of the infringement of the '190 Patent since on or about March 3, 2017, as discussed *supra*.

35. Boston Scientific has been aware of the '190 Patent and the manner of infringing the '190 Patent since at least on or about September 9, 2004 and no later than March 3, 2017. Pursuant to 35 U.S.C. § 271(b), Boston Scientific is liable for inducement of infringement by having, and continuing to, knowingly cause (or intend to cause) the direct infringement of the '190 Patent by Customers (including but not limited to FVRH and LAMC, as described *infra*) of the Accused Systems in the United States that use the Accused Systems. Moreover, by marketing and selling the Accused Systems, Boston Scientific is liable for inducement of infringement. By further providing instructions on how to use the Accused Systems in an infringing manner, Boston Scientific is liable for inducement of infringement. *See, e.g.,* Paragraphs 14-30 above.

36. Boston Scientific has been aware of the '190 Patent and the manner of infringing the '190 Patent since at least on or about September 9, 2004 and no later than March 3, 2017. Pursuant to 35 U.S.C. § 271(c), Boston Scientific is liable for contributory infringement of the '190 Patent by having sold or offered to sell and continuing to sell or offer to sell the Accused Systems, and the components thereof, that comprise a material component of the invention embodied in the '190 Patent,

1  that are especially made or adapted for use in infringing the '190 Patent, and that are
2  not suitable for any substantial non-infringing use with knowledge that the '190
3  Patent was/is being directly infringed by Customers (including but not limited to
4  FVRH and LAMC, as described *infra*). Boston Scientific, with knowledge of the
5  '190 Patent continues to sell, the delivery device and mesh, which are components,
6  of the Accused Systems, each of which is a material component of the inventions
7  embodied in the '190 Patent and of the Accused System. Furthermore, the Accused
8  Systems and/or components thereof are not suitable for any substantial non-
9  infringing use and are especially made or adapted for use in infringing the '190
10 Patent. Boston Scientific is therefore liable for contributory infringement of the '190
11 Patent through having knowledge that the '190 Patent is being directly infringed.
12 *See, e.g.,* Paragraphs 14-30 above.

13       37. Boston Scientific has been aware of the '190 Patent and the manner of
14 infringing the '190 Patent since at least on or about September 9, 2004 and no later
15 than March 3, 2017. Pursuant to 35 U.S.C. 271(f), Boston Scientific is liable for
16 infringement of the '190 Patent by knowingly supplying customers outside of the
17 United States with all or a substantial portion of the components of the Accused
18 Systems in or from the United States in a manner to actively induce the combination
19 of such components. Further, any the components Boston Scientific supplies have
20 no other substantial non-infringing use and are not staple articles or commodities of
21 commerce. Boston Scientific knew that the combination of components and use of
22 the Boston Scientific would infringe the '190 Patent if it occurred within the United
23 States. *See, e.g.,* Paragraphs 14-30 above.

24       38. Upon information and belief, Boston Scientific began sales of the
25 Accused Systems in the United States in approximately 2008. Despite Boston
26 Scientific's knowledge of the '190 Patent obtained during the communications with
27 Dr. Walshe and his counsel beginning in 2004, as detailed in paragraphs 23-28
28

1  (incorporated herein by reference), Boston Scientific began sales of the Accused
2  Systems in reckless disregard of the patent owner's patent rights.
3        39. Since beginning sales of the Accused Systems in 2008, with knowledge
4  of the '190 Patent and its applications to future development at Boston Scientific
5  since at least 2004, Boston Scientific continued to develop, make, use, sell, and offer
6  to sell the Accused Systems to Customers, thereby willfully and knowingly
7  infringing, directly and indirectly, the '190 Patent.
8        40. Upon information and belief, Boston Scientific used ideas and
9  disclosures from the '190 Patent, of which it had been aware since 2004 (including at
10 least the marketing, legal, and research and development teams, as discussed in
11 paragraphs 23-28), in designing the Accused Systems, in reckless disregard of the
12 patent owner's patent rights, thereby willfully and knowingly infringing, directly and
13 indirectly, the '190 Patent.
14       41. Upon information and belief, Boston Scientific took no steps to alter the
15 design of the Accused Systems to avoid infringement of the '190 Patent from 2004
16 to the additional notice provided by TAI to Boston Scientific on March 3, 2017, or
17 since.
18       42. Since receiving a detailed claim chart setting forth the basis for
19 infringement of the '190 Patent no later than on or about March 3, 2017, Boston
20 Scientific has continued to develop, make, use, sell, and offer to sell the Accused
21 Systems to Customers, thereby willfully and knowingly infringing, directly and
22 indirectly, the '190 Patent.
23       43. The '190 Patent is given the presumption of validity. Since becoming
24 aware of the '190 Patent and the basis for infringement on or about September 9,
25 2004 and no later than March 3, 2017, Boston Scientific has not established by clear
26 and convincing evidence that the '190 Patent is invalid for any reason, nor has
27 Boston Scientific challenged the validity of the '190 Patent in any federal court or
28 before the USPTO.

44. Upon information and belief, based on a review of the Boston Scientific website and public information, Boston Scientific has not taken any steps to stop infringing the '190 Patent since becoming aware of the '190 Patent and the basis for infringement on or about September 9, 2004 and no later than March 3, 2017. Upon information and belief, based on a review of the Boston Scientific website, Boston Scientific has not modified any of its instructions or guidance to Customers to prevent Customers from infringing the '190 Patent.

45. Upon information and belief, Boston Scientific has not relied on a formal opinion of counsel to continue its infringement of the '190 Patent despite its knowledge of its infringement.

46. Upon information and belief, based on Boston Scientific's failure to avoid infringement to date, Boston Scientific will continue its infringing activity throughout the course of this Action, despite additional discovery and evidence, further demonstrating its reckless disregard of Plaintiff's patent rights.

47. Therefore, in view of the actions set forth in Paragraphs 38-46, Boston Scientific's infringement of the Accused Systems is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '190 Patent and thus acting in reckless disregard of Plaintiff's patent rights.

48. As a result of Boston Scientific's acts of infringement of the '190 Patent, Plaintiff has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

49. Unless an injunction is issued enjoining Boston Scientific and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '190 Patent, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

**COUNT 2 – FVRH'S INFRINGEMENT OF THE '190 PATENT**

50. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 49 as though fully set forth herein.

1    51.    Upon information and belief, FVRH has in the past infringed and
2  continues to infringe the '190 Patent by making, using, selling and/or offering to sell,
3  in this judicial district, the Accused Systems, which embody the patented inventions
4  of the '190 Patent.
5    52.    Pursuant to 35 U.S.C. § 271(a), FVRH is liable for direct infringement
6  of the '190 Patent by having made, used, offered to sell, or sold and continuing to
7  make, use, sell and/or offer to sell the Accused Systems in the United States.
8  FVRH's infringement includes, but is not limited to, the making, the use, sale,
9  importation and/or offer for sale of the Accused Systems that embody the patented
10 invention of the '190 Patent.  FVRH has contracted to sell and has sold the Accused
11 Systems (in configurations generally similar to the allegations previously made
12 herein) to, *inter alia*, Customers.
13   53.    As a non-limiting example, FVRH infringes the '190 Patent when
14 doctors and other medical professionals use the Accused Systems to perform
15 procedures to implant the Accused Systems in patients at FVRH, such as for
16 treatment of at least stress urinary incontinence, including medical professionals
17 employed by FVRH directly and medical professionals to which FVRH has granted
18 hospital privileges through its medical staff and clinical privileges application
19 process.  As a further non-limiting example, FVRH infringes the '190 Patent when it
20 sells the Accused Systems to patients, such as via a charge on the patient's hospital
21 bill, including but not limited to billing the patient's insurer for the cost of the
22 Accused Systems.
23   54.    As a result of FVRH's acts of infringement of the '190 Patent, Plaintiff
24 has suffered injury to its business and property in an amount to be determined as
25 damages, and will continue to suffer damages in the future.
26   55.    Unless an injunction is issued enjoining FVRH and their officers,
27 agents, servants, employees and attorneys, and all those persons in active concert or
28

participation with them from infringing the '190 Patent, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT 3 – LAMC'S INFRINGEMENT OF THE '190 PATENT

56. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 55 as though fully set forth herein.

57. Upon information and belief, LAMC has in the past infringed and continues to infringe the '190 Patent by making, using, selling and/or offering to sell, in this judicial district, the Accused Systems, which embody the patented inventions of the '190 Patent.

58. Pursuant to 35 U.S.C. § 271(a), LAMC is liable for direct infringement of the '190 Patent by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer to sell the Accused Systems in the United States. LAMC's infringement includes, but is not limited to, the making, the use, sale, importation and/or offer for sale of the Accused Systems that embody the patented invention of the '190 Patent. LAMC has contracted to sell and has sold the Accused Systems (in configurations generally similar to the allegations previously made herein) to, *inter alia*, Customers.

59. As a non-limiting example, LAMC infringes the '190 Patent when doctors and other medical professionals use the Accused Systems to perform procedures to implant the Accused Systems in patients at LAMC, such as for treatment of at least stress urinary incontinence, including medical professionals employed by LAMC directly and medical professionals to which LAMC has granted hospital privileges through its medical staff and clinical privileges application process. As a further non-limiting example, LAMC infringes the '190 Patent when it sells the Accused Systems to patients, such as via a charge on the patient's hospital bill, including but not limited to billing the patient's insurer for the cost of the Accused Systems.

1    60.   As a result of LAMC's acts of infringement of the '190 Patent, Plaintiff has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

2    61.   Unless an injunction is issued enjoining LAMC and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '190 Patent, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. A declaration that Boston Scientific has infringed and is infringing, has induced and is inducing, has contributed and is contributing to the infringement of the '190 Patent;

B. A permanent injunction enjoining Boston Scientific, its officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing, inducing infringement, and contributing to the infringement of the '190 Patent;

C. An award of damages adequate to compensate Plaintiff for the infringement of the '190 Patent by Boston Scientific and its Customers;

D. A declaration that Boston Scientific's continuing infringement of the '190 Patent was and is willful, justifying a trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

E. An award of pre-judgment and post-judgment interest on the damages caused by reason of Boston Scientific's infringement of the Asserted Patent;

F. A declaration that FVRH has infringed and is infringing the '190 Patent;

G. A permanent injunction enjoining FVRH, its officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing the '190 Patent;

H. An award of damages adequate to compensate Plaintiff for the infringement of the '190 Patent by FVRH and its Customers;

I. An award of pre-judgment and post-judgment interest on the damages caused by reason of FVRH's infringement of the Asserted Patent;

J. A declaration that LAMC has infringed and is infringing the '190 Patent;

K. A permanent injunction enjoining LAMC, its officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing the '190 Patent;

L. An award of damages adequate to compensate Plaintiff for the infringement of the '190 Patent by LAMC and its Customers;

M. An award of pre-judgment and post-judgment interest on the damages caused by reason of LAMC's infringement of the Asserted Patent;

N. A declaration that this an exceptional case and that Plaintiff be granted its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285;

O. An award of costs and expenses to Plaintiff; and

P. A grant to Plaintiff of such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Tissue Anchor Innovations, LLC, demands trial by jury on all claims and issues so triable.

Dated: April 30, 2019

By: _/s/ Sarah A. Pfeiffer_

Sarah A. Pfeiffer
Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

| | |
|---|---|
| 1 | Sarah A. Pfeiffer (CA Bar No. 278205) |
| | Email: sap@msf-law.com |
| 2 | Seth H. Ostrow (*pro hac vice* to be filed) |
| | Email: sho@msf-law.com |
| 3 | **MEISTER SEELIG & FEIN LLP** |
| 4 | 125 Park Avenue, 7th Floor |
| | New York, NY 10017 |
| 5 | Telephone: (212) 655-3500 |
| 6 | Fax: (646) 539-3649 |