Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
Seth H. Ostrow (*pro hac vice*)
Email: sho@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff Tissue Anchor Innovations, LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tissue Anchor Innovations, LLC, | Case No.: 8:19-CV-00791-JVS-ADS |
| Plaintiff, | **PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF** |
| vs. | Complaint Filed: April 30, 2019 |
| Fountain Valley Regional Hospital and Medical Center, Los Alamitos Medical Center, and Boston Scientific Corporation, | Discovery Cut-Off: June 29, 2020<br>Pretrial Conference: Dec. 21, 2020<br>Trial Date: Jan. 26, 2021 |
| Defendants. | |

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ...................................................................................... ii

3   I.   INTRODUCTION ......................................................................................... 1

4   II.  BACKGROUND ............................................................................................ 2

5   A. Procedural History ....................................................................................... 2

6   B. The '190 Patent ............................................................................................ 3

7   C. Claims .......................................................................................................... 4

8   D. The '190 Patent Prosecution History .......................................................... 5

9   E. Person of Ordinary Skill in the Art ............................................................ 6

10  III. CLAIM CONSTRUCTION LEGAL STANDARDS ................................... 6

11  IV.  AGREED CONSTRUCTIONS ..................................................................... 9

12  V.   TAI'S PROPOSED CONSTRUCTIONS OF DISPUTED TERMS .............. 9

13  A. "said anchor . . . " ....................................................................................... 9

14  B. "barb end and a barb with a tip shaped to penetrate soft tissue" ............. 12

15  C. "a plunger slidably positioned in said housing" ....................................... 13

16  D. "plunger" ................................................................................................... 16

17  E. "said anchor being advanced away from said housing upon operation of

18       said plunger" ............................................................................................. 18

19  F. "upon operation of said plunger" .............................................................. 18

20  VI.  CONCLUSION ........................................................................................... 19

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## **CASES**

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) .......................................... 13

*Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002)................................................... 15

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ................................ 8

*Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) .......................... 16

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ............................................................................................................................................ 7

*Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002) ........................................ 3

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) ................ 8

*Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 515 (Fed. Cir. 2016) .................... 8

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008)................... 7

*Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)................................................ 8

*Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1055 (Fed. Cir. 2009) ....................... 17

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).................................................. 6

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)............................. 11, 15

*Melendez v. Dayan*, No. CV176261-MWFMRWX, 2018 WL 2717872, at *10 (C.D. Cal. Mar. 30, 2018)........................................................................................................................................... 3

*Multiform Desiccants, Inc. v. Medzam*, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998) ...................... 7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)........ 6, 9

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)............................................... passim

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).................. 7

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 135 S. Ct. 831, 839–40 (2015) ................. 2, 7

*Tissue Anchor Innovations LLC v. ASTORA Women's Health, LLC*, No. 2:15-cv-0473-RGD-DEM,
D.I. 70 (E.D. Va. July 6, 2016) ................................................................................................. 2

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ........................... 19

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) .......................... 6, 7, 13

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ...... 8

1    Plaintiff Tissue Anchor Innovations, LLC, ("TAI") submits this Opening

2    Claim Construction Brief regarding the proper construction of terms in U.S. Patent

3    No. 6,506,190 (the "'190 Patent", Ex. A[1]) proposed for construction by TAI and

4    Defendants Fountain Valley Regional Hospital and Medical Center ("FVRH"), Los

5    Alamitos Medical Center ("LAMC"), and Boston Scientific Corporation ("BSC")

6    (FVRH, LAMC, and BSC together, "Defendants").[2]

7    **I.    INTRODUCTION**

8    The '190 Patent claims a tissue-anchoring system, designed for treating stress

9    urinary incontinence ("SUI") in women.  BSC manufactures and sells such devices

10   throughout the United States and the world.  The '190 Patent has been previously

11   litigated, including another district court issuing a claim construction order, though the

12   prior cases resolved before the courts made any final determinations on infringement

13   or validity.  The parties here have agreed to adopt two of the prior constructions, but

14   TAI contends that there are several constructions that leave ambiguities in this case.

15   These ambiguities were not addressed in the prior litigation, but should be clarified by

16   this Court to assist the parties and jury resolve issues specific to this case.

17   TAI has proposed a few additional terms that vary slightly from the terms that

18   the prior court construed—in some cases, this is a smaller portion of a construed

19   phrase, and in others, a slightly longer phrase that raises an ambiguity if the prior

20   construction is inserted.  Although TAI contends that the BSC products infringe under

21   the prior constructions, BSC's current positions indicate that there is ambiguity in the

22   prior constructions when applied to this case.  Thus, it would be helpful to both the

23   parties and the jury, who will ultimately evaluate infringement, to clarify these terms.

24   BSC, on the other hand, generally proposes blindly adopting the prior constructions

25

26

27   [1] All exhibits are attached to the concurrently filed Declaration of Sarah Pfeiffer ("Pfeiffer Decl.").
     [2] The case has been stayed as to FVRH and LAMC, but was stayed after the parties exchanged
28   proposed terms.  (D.I. 59.)  FVRH and LAMC will be bound by the Court's findings relating to
     whether the BSC Accused Products infringe, including any claim construction findings.  (*Id.*)

1    without addressing these ambiguities.  Simply adopting the prior constructions without

2    TAI's proposed clarifications would not be helpful to the jury.

3            Accordingly, TAI respectfully requests the Court adopt its proposed

4    constructions for the disputed terms.

5    **II.      BACKGROUND**

6            **A.      Procedural History**

7            On April 30, 2019, TAI filed the Complaint (D.I. 1), alleging that Defendants

8    infringed, directly and indirectly, the '190 Patent.  On August 12, 2019, Defendants

9    filed a motion to sever and stay (D.I. 37), which the Court granted on November 25,

10   2019 (D.I. 59).  On September 25, 2019, TAI filed a discovery motion for

11   authorization to serve amended infringement contentions (D.I. 51), which the Court

12   granted on November 25, 2019 (D.I. 59).  On November 11, 2019, the parties filed

13   the joint claim construction statement.  (D.I. 58.)  Claim construction discovery has

14   now closed.

15           The '190 Patent has been involved in prior litigation and another district court

16   has previously issued a claim construction order.  *See Tissue Anchor Innovations*

17   *LLC v. ASTORA Women's Health, LLC*, No. 2:15-cv-0473-RGD-DEM, D.I. 70 (E.D.

18   Va. July 6, 2016) ("*ASTORA*") (claim construction order attached hereto as Ex. C).

19   Although TAI does not believe adopting the *ASTORA* constructions would be

20   dispositive, nor would adopting these constructions change that BSC's products

21   infringe the '190 Patent, the constructions leave open ambiguities that this Court

22   could clarify.  The *ASTORA* court's constructions are not necessarily binding on this

23   proceeding—the Supreme Court has noted that a prior claim construction may

24   "sometimes be binding" and "sometimes will serve as persuasive authority."  *Teva*

25   *Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 135 S. Ct. 831, 839–40 (2015).  This

26   case is the perfect example of when the prior ruling should serve as persuasive

27   authority, but this Court should modify those constructions to resolve ambiguities

28   that will clarify the case for the parties and, ultimately, the jury.

To the extent BSC argues that collateral estoppel would prevent this Court from providing additional clarity, "the party asserting collateral estoppel bears the burden of establishing these requirements. *Melendez v. Dayan*, No. CV176261-MWFMRWX, 2018 WL 2717872, at *10 (C.D. Cal. Mar. 30, 2018) (citing *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002)). Should BSC present such arguments for any specific terms, TAI will respond in the next brief.

**B.    The '190 Patent**

The '190 Patent issued on January 14, 2003. (Ex. A.) The '190 Patent includes 22 claims, five of which are independent. TAI has alleged that BSC's Solyx products ("Accused Products") infringe claims 1, 4, and 8. Claim 1 is directed to a tissue anchor system used in surgical procedures, such as surgical treatments for urinary incontinence (also called stress urinary incontinence or "SUI"). The '190 Patent identifies and sets out to solve several problems relating to SUI treatment procedures. For example, treatment of SUI "requires supporting the bladder neck". ('190 Patent at 1:49-50.) The '190 Patent discusses several then-existing procedures that use sutures and additional support, such as slings, "placed under the area to be supporting and sutured into an anchoring tissue". (*Id.* at 2:1-21.)

To address these problems, the '190 Patent proposes a tissue anchoring system for use in soft tissue that includes an anchor, plunger, housing, and an attachment member, which can be used to place a sling. (*Id.* at 2:56-3:3.) The '190 Patent describes many embodiments, but there are several claimed features that are described consistently in the specification. As noted, the purpose of the device is to treat certain urogynecological issues. The various embodiments typically include a tissue anchor that is consistently described as being "advanc[ed] into a tissue". (*Id.* at Abstract; *see also, e.g., id.* at 2:60-64, 3:13-15, 6:10-11, 6:57-58, 7:19-21, 9:36-55, 10:10-11, 10:58-67, 11:60-12:3, 13:27-32, 15:1-2, 15:39-40, 15:61-62, 16:60:17:1, 18:42-45.) The anchor includes a barb to retain the anchor in the soft tissue, which, in certain embodiments, also serves to assist in placing the anchor in the tissue. (*See, e.g., id.* at

3

2:64-65, 6:45-58, 7:21-30, 8:8-10, 9:47-55, 10:65-67, 13:28-30, 15:60-16:8, 16:66-17:2, 18:41-48, 18:65-66.)  Certain embodiments include a plunger to "advance anchor 20 into a tissue and uncouple therefrom, leaving anchor 20 in tissue." (*Id.* at 6:10-11.)  The plunger serves to aid in releasing the anchor into the tissue from the housing. (*Id.*; *see also, e.g., id.* at 7:43-51, 9:33-55, 10:64-11:3, 14:17-52, 16:33-36, 16:57-17:7 ("the surgeon will deploy at least first plunger 301 to activate body . . . [t]his deploys barb 102 in the soft subcutaneous tissue").)

The '190 Patent explains that using these components as a tissue anchor system "obviates the need for extensive vaginal dissection" and "minimal manipulation of the sacrospinous ligaments and surrounding tissue" by requiring "only a single puncture of the sacrospinous ligament." (*Id.* at 12:52-64.)  This serves to reduce surgery time and allows for further adjustments without additional surgery. (*Id.* at 12:65-13:2.)

**C.  Claims**

The asserted claims of the '190 Patent include one independent claim.  Claim 1 is shown below.

> 1. A tissue anchor system comprising
>
>> a delivery device and
>>
>> a tissue anchor,
>>
>> said delivery device having a housing,
>>
>> a plunger slidably positioned in said housing,
>>
>> said anchor having a barb end and a barb with a tip shaped to penetrate soft tissue positioned thereon, and
>>
>> an attachment member,
>>
>> said anchor being advanced away from said housing upon operation of said plunger,
>>
>> said barb adapted to resist removal from a tissue once inserted.

Claim 4 further specifies that "said housing is hollow and said plunger has a portion positioned within said hollow of said housing."  Claim 8 specifies that said

housing has a finger grip."  The parties do not dispute the meaning of any terms unique to the dependent claims.

**D.    The '190 Patent Prosecution History**

On November 17, 2000, the '190 Patent was filed as Application No. 09/716,851 ("'851 App.").  (Ex. A at 1.)  The '190 Patent claims priority as a continuation to application No. PCT/US99/11225, filed on May 21, 1999, and to provisional application No. 60/086,284, filed on May 21, 1998. (*Id.* at 1.)  A complete copy of the prosecution history for the '190 Patent is attached as Exhibit B.  Citations will be made to the last three digits in the Bates numbers in the lower right portion of each page.

On March 28, 2002, the examiner issued a non-final Office action rejecting pending claims 1-27.  (Ex. B at 087-088.)  The examiner rejected claims 6-8, 10, 12-19, 21, and 24-27 under Section 112 for various uses of "said" without proper antecedent basis. (*Id.* at 089.)  The examiner also rejected claims 1 and 2 under Section 102 as anticipated by Brenneman *et al* (U.S. Patent No. 6,053,935).  (*Id.* at 090.)  The examiner rejected claims 3-11 under Section 102 based on Larsen (U.S. Patent No. 5,949,001), claims 3-19 as anticipated by Lax (U.S. Patent No. 5,976,127), and claims 20-23 and 27 as anticipated by Greenfield (U.S. Patent No. 5,584,835).  (*Id.* at 091.) The examiner indicated that claims 24-26 would be allowable if modified to correct the Section 112 rejections.  (*Id.*)

On July 26, 2002, the applicant submitted an Office action response ("OAR") including claim amendments and remarks.  (*Id.* at 098-112.)  The applicant canceled claims 1, 2, 9, 12-19, and 21, amended claims 3, 6-8, 10, 24, 25, and 27, and added claims 28-34.  (*Id.* at 100.)  The applicant argued that Larson no longer anticipated amended claim 3, which added that the anchor has a tip shaped to penetrate soft tissue. (*Id.* at 105.)  The applicant argued that Larsen disclosed an anchor for insertion into bone material, including requiring the surgeon to drill into bone to place the anchor. (*Id.* ("there is no fair reading of Larsen which discloses an anchor with a tip shaped to

penetrate soft tissue").)  The applicant further argued this limitation overcame the rejection in view of Lax because Lax used the sharp edge of a trocar to penetrate tissue, and showed a rounded tip on the anchor, with no indication that the anchor had a "tissue penetrating tip."  (*Id.* at 105-106.)  To overcome the Greenfield rejection of claims 20-23 and 27, the applicant argued that Greenfield did not disclose a "barb" because "the threads of a screw are not equivalent to barbs."  (*Id.*)  The applicant argued that a "barb[] pushed into a soft material will resist withdrawal."  (*Id.* at 107.)

On August 28, 2002, a notice of allowance issued.  (*Id.* at 113-114.)  On November 1, 2002, the examiner issued a supplemental notice of allowability.  (*Id.* at 119-120.)  The examiner did not offer any reasons for allowance.  (*Id.*)

### E.    Person of Ordinary Skill in the Art

TAI contends that to qualify as a person of ordinary skill in the art in 2000, an individual would most likely be a medical doctor with at least 3-5 years of experience in urogynecological surgery, or have a masters degree in biomedical/biomechanical/mechanical engineering or an equivalent degree, with two-to-three years of experience designing medical devices for use in urogynecological surgery, with more experience compensating for less formal education.  TAI contends that the related "art" as it pertains to the Asserted Patent is urogynecological surgical implants.

## III.   CLAIM CONSTRUCTION LEGAL STANDARDS

A patent's claims "define[] the scope of the patentee's rights."  *Teva Pharmaceuticals*, 135 S.Ct. at 835 (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)).  "When the parties raise an actual dispute regarding the proper scope" of the asserted claims, it is for the court, not the jury, to resolve.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  "The words of a claim 'are generally given their ordinary and customary meaning.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

That ordinary meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313.

To determine the ordinary meaning, the court should review "the same resources as would" the person of ordinary skill in the art. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). Those resources include intrinsic evidence, which includes "the words of the claims themselves, the remainder of the specification, [and] the prosecution history," and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Although claim construction is generally a matter of law, there may be "subsidiary factual findings," such as those based on evidence extrinsic to the patent. *Teva Pharmaceuticals USA, Inc.*, 135 S.Ct. at 838.

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. Both "the context in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question" are useful for understanding the ordinary meaning. *Id.* "[P]roper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008) (citations omitted).

"[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). On occasion, "the specification may reveal a special definition given to a claim term . . . that differs from the meaning it would otherwise possess. In such

7

cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citing *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)).

Extrinsic evidence such as dictionaries, treatises, and expert testimony "can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. But the Federal Circuit has cautioned against over-reliance on extrinsic evidence such as dictionaries where such evidence "is inconsistent with the intrinsic record." *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015).

The Federal Circuit has advised that "a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006); *see also Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 515 (Fed. Cir. 2016) ("Evidence regarding the characteristics of the accused products is not pertinent to define the scope of the asserted claims."). Thus, while resolution of the construction disputes will help the parties better understand the infringement analysis, the claims should be construed without specific reference or comparison to the Accused Products.

## IV.   AGREED CONSTRUCTIONS

The parties have agreed that the following constructions from the *ASTORA* case should apply in this case.

| Term | Agreed Construction |
|---|---|
| "tissue anchor" | "a device capable of being inserted in or through soft tissue and being retained after insertion" |
| "attachment member" | "engageable structure on or connected to the tissue anchor for attaching one or more other items" |

## V.   TAI'S PROPOSED CONSTRUCTIONS OF DISPUTED TERMS

### A.   "said anchor . . . "

| "said anchor having a barb end and a barb with a tip shaped to penetrate soft tissue positioned thereon" Proposed by TAI '190 Patent: claim 1 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "said anchor consisting of at least a leading portion that is inserted into soft tissue with at least one or more barbs positioned thereon and a tip shaped to penetrate the soft tissue" | "said anchor having a leading portion with at least one or more barbs and a tip shaped to penetrate soft tissue positioned on the leading portion" |

The *ASTORA* court did not construe the full "said anchor . . ." term.  It previously construed the term "barb end and a barb with a tip shaped to penetrate soft tissue" (discussed below).  The previous construction of the "barb end . . ." portion leaves ambiguities that require resolution.  When the parties raise "an actual dispute regarding the proper scope" of the asserted claims, the court should resolve the issue.  *O2 Micro Int'l Ltd.*, 521 F.3d at 1360.  As detailed below, TAI's proposed revisions are consistent with the claim language, specification, and other intrinsic evidence, and should therefore be adopted for this case.

TAI's construction clarifies for the jury that the anchor can consist of *at least* a leading portion, but that it may have no other structural elements, or it may have additional structural elements.  The claim does not include any other structural elements, and the specification makes clear that other elements are optional.  (*See,*

1    *e.g.,* '190 Patent at 6:44-55 ("Inclusion of shaft 120 is optional").  Thus, TAI

2    proposes rephrasing "having" as "consisting of at least" to clarify this for the jury.

3            Additionally, TAI's construction explains that the anchor is inserted into soft

4    tissue and includes at least one or more barbs: "a leading portion that is inserted into

5    soft tissue".  Beginning with the claim itself, this is consistent with the surrounding

6    language, which later specifies "a tip shaped to penetrate soft tissue", indicating that

7    the anchor will be inserted into soft tissue.  ('190 Patent at claim 1.)

8            The specification "is the single best guide to the meaning of a disputed term"

9    and is "usually dispositive."  *Phillips*, 415 F.3d at 1315.  Here, the specification

10   confirms TAI's construction, explaining that "the tissue anchoring system will be

11   used in soft tissue." ('190 Patent at 2:58-59.)  The '190 Patent specification

12   repeatedly and consistently describes that the anchor and barbs are inserted into soft

13   tissue:

14   - "a tissue anchor positioned on the tissue-anchoring device that will be inserted into a tissue" (*id.* at Abstract);

15   - "barb end is adapted to resist removal from a tissue after the anchor has
16     been inserted" (*id.*);

17   - "tissue anchor is placed on the tissue-anchoring device that is advanced into a tissue" (*id.* at 2:61-62);

18   - "allows plunger 5 to advance anchor 20 into a tissue and uncouple
19     therefrom, leaving anchor 20 in tissue" (*id.* at 6:10-11);

20   - "leaving anchor 20 supported within the tissue" (*id.* at 9:37);

21   - "barb 102 advances into the subcutaneous tissue and deploys" (*id.* at
     18:47-48).

22   (*See also, e.g., id.* at 3:13-15, 6:57-58, 7:19-21, 10:10-11, 10:58-67, 11:60-12:3,

23   13:28-29, 15:1-2, 15:39-40, 15:61-62, 16:60:17:1.)

24           TAI's proposed construction further clarifies that the barbs are positioned on

25   the anchor.  Where embodiments include barbs, the barbs serve to retain the anchor

26   in the tissue.  Thus, it makes sense to clarify that the barb is positioned on the portion

27   of the anchor that is inserted into the soft tissue so that it may serve its purpose of

28   retaining the anchor.  Again, the '190 Patent describes this feature repeatedly,

1  explaining that the "barb end 21 is adapted to resist removal of anchor 20" and that

2  "a deployed barb 40 will resist removal from tissue." (*Id.* at 6:56-67 and 7:20-23;

3  *see also id.* at 2:64-65, 6:45-58, 8:8-10, 9:47-55, 10:65-67, 13:28-30, 15:60-16:8,

4  16:66-17:2, 18:41-48, 18:65-66.) These descriptions further confirm that TAI's

5  proposal explaining that the anchor is inserted in soft tissue is correct.

6        Finally, TAI's proposed construction makes clear that the anchor must include

7  a tip shaped to penetrate tissue, which allows both the anchor and its barb to be

8  inserted in the soft tissue. Again, this fits with the consistent descriptions in the '190

9  Patent, which describes the anchor as having "a tip 130 adapted to penetrate soft

10  tissue" and that the tip "should be fairly rigid to ease tissue penetration." (*Id.* at

11  13:14-18.) The parties' constructions are fairly consistent on this aspect, but BSC's

12  proposal states that the tip is positioned on the leading portion. This is unnecessary,

13  as TAI's construction makes clear that the tip is designed to penetrate tissue and

14  nothing in the claim or specification requires any further elaboration on the location

15  of the tip. Indeed, the word "tip" itself indicates a location and a layperson would

16  readily understand this.

17        The Federal Circuit has confirmed that it is proper to consider the function of

18  an invention to determine the proper construction of a term. *Medrad, Inc. v. MRI*

19  *Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("It is therefore entirely proper

20  to consider the functions of an invention in seeking to determine the meaning of

21  particular claim language."). As the '190 Patent makes clear, the anchor and barbs

22  are meant to be inserted and retained in soft tissue without the need for a separate

23  incision or drilling into the bone because this "obviates the need for extensive

24  vaginal dissection" and requires "minimal manipulation of the sacrospinous

25  ligaments and surrounding tissue" because there is "only a single puncture of the

26  sacrospinous ligament." (*Id.* at 12:52-64.) The easy insertion and continued

27  retention serve to reduce surgery time and allows for further adjustments without

28  additional surgery. (*Id.* at 12:65-13:2.)

1   TAI's proposal, which also addresses the "barb end . . ." portion previously

2   construed, serves to clarify existing ambiguities if that construction were adopted

3   without construing the longer phrase.  BSC's proposal, however, does not offer any

4   construction for the full term—BSC has simply inserted its proposal for "barb end . .

5   ."  As noted below, if either TAI's or BSC's proposal for this term is adopted, there

6   is no need for this Court to also construe just a portion of the full phrase that does not

7   appear in any other location in the asserted claims.  The "barb end . . ." term does not

8   appear outside of the full phrase TAI proposes here, thus providing the same

9   construction twice would confuse the jury and would be superfluous.

10   This Court should adopt TAI's proposed construction for this term because it

11   serves to clarify the prior *ASTORA* construction based on the claims, specification,

12   and other evidence.  TAI's proposal furthers the aim of claim construction: to clarify

13   the meaning of the terms to aid the fact-finder in evaluating both infringement and

14   validity.

15   **B.      "barb end and a barb with a tip shaped to penetrate soft tissue"**

| "barb end and a barb with a tip shaped to penetrate soft tissue" Proposed by BSC '190 Patent: claim 1 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| TAI proposes that this term not be construed in view of the construction of the larger phrase from which this is extracted, or least construed consistently with its proposed construction for, "said anchor having a barb end and a barb with a tip shaped to penetrate soft tissue positioned thereon", and that this term does not require a separate construction. | "the leading portion of the tissue anchor having at least one or more barbs positioned thereon with a tip shaped to penetrate soft tissue" |

25   TAI's proposed construction for the entire "said anchor . . ." phrase includes a

26   construction that addresses this term.  Separate construction is not necessary, and as

27   noted above, the *ASTORA* court's previous construction leaves various ambiguities

28   that need resolution for the parties (and jury) to evaluate infringement.  Thus, this

Court should adopt TAI's proposed construction for the full "said anchor . . ." term and not separately address this term.  If, however, the Court is inclined to construe this term in addition to the larger phrase, TAI proposes that the construction be consistent with TAI's proposal from the larger phrase: "a leading portion that is inserted into soft tissue with at least one or more barbs positioned thereon and a tip shaped to penetrate the soft tissue".  But TAI contends that identifying two constructions, one of which is covered in another construction and which does not appear elsewhere in the claim, would serve only to confuse the jury.

### C.   "a plunger slidably positioned in said housing"

| "a plunger slidably positioned in said housing" Proposed by TAI '190 Patent: claim 1 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "a plunger positioned in the housing so as to be capable of sliding forward or both forward and backward" | "a member adapted to slide forward within the housing of the delivery device when a force is applied to the member where the member is slidably positioned in the housing" |

The *ASTORA* court did not construe the entire phrase "a plunger slidably positioned in said housing"—that court only construed "plunger" (discussed further below).  (Ex. C at 26.)  TAI's proposal for this phrase is consistent with the claim language and specification because it does not limit the directionality of "slidably", but instead reflects the purpose of the plunger: "to assist advancing the anchor into a tissue."  ('190 Patent at 2:62-64.)

The Federal Circuit has confirmed that "the claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Phillips*, 415 F.3d at 1314 (citing *Vitronics*, 90F.3d at 1582).  It is important to consider "the context of the surrounding words" when evaluating the proper construction of a term.  *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).  Here, context makes clear that nothing in the intrinsic evidence limits the "plunger" to moving only in a

forward direction.  The other reference to the plunger in claim 1 indicates that "operation of said plunger" causes the anchor to "advance[] away" from the housing. ('190 Patent at claim 1.)  The claim does not reference any directionality for the plunger and nothing in the claim indicates that it could not slide in both directions. Thus, the context of the claim demonstrates that BSC's proposal is overly narrow.

The '190 Patent specification further confirms that the plunger's movement is not limited to a forward direction.  Rather, the specification refers to the *anchor* being "advanced" into the patient's tissue by a sliding motion of the plunger—it is of no importance to the invention's purpose which direction the plunger moves as long as the anchor is placed in the tissue.  This is consistent throughout the various embodiments described in the specification:

- "a plunger assembly slidably positioned in the housing to assist advancing anchor into a tissue" ('190 Patent at Abstract, 2:62-64)

- "a plunger 5 slidably positioned in hollow barrel . . . that allows plunger 5 to advance anchor 20 into a tissue and uncouple therefrom" (*id.* at 5:66-6:11, 14:18-19)

- "a sleeve within which flexible plunger 5a slides" (*id.* at 6:19)

- "Inclusion of plunger 5 in the embodiment of FIG. 12 requires that plunger 5 adapt to allow shaft 120 to pass through or by plunger 5 . . . plunger 5 alone activates shaft 120" (*id.* at 14:19-24)

- "plunger 301 or 302 activates either body 99 or shaft 120"

- "shaft 120 is advanced by operation of plunger 5" (*id.* at 16:35-36)

- "the surgeon will deploy at least first plunger 301 . . . This deploys barb 102 in the soft subcutaneous tissue" (*id.* at 16:66-17:1)

- anchor is "advanced through the scope, using a rigid or flexible plunger 5" (*id.* at 19:13-14).

The specification does not indicate any required direction for the plunger's movement; all that is required is that the plunger slides to facilitate insertion of the anchor into tissue.  Other references to the anchor merely note that it is "moveable relative to [the] hollow chamber of the device.  (*See, e.g., id.* at 13:10; *see also id.* at 14:50 (noting that anchor can move "upward and downward").)  Indeed, in one

embodiment, the specification states that the shaft of the anchor "is slidably inserted" and "passes adjacent to plunger" (*id.* at 7:45-46), again lacking any directionality. There is no specific direction the anchor must move in (other than into the tissue and away from the housing), and the plunger merely serves to assist in inserting the anchor into tissue.  When considering this purpose, TAI's construction is the better construction.  *See, e.g., Medrad, Inc.*, 401 F.3d at 1319.

The specification occasionally refers to the plunger being "advanced" and "depressed", but the statements are made without reference to any other structure, so it is still not clear that "forward" is an appropriate limitation: "plunger 5 is advanced, releasing the anchor 20."  ('190 Patent at 9:35; *see also* 9:52-53 and 14:41-42 ("to cause deployment of body 99 when the plunger is depressed"), 17:6.)  The specification does not clarify whether the plunger is "advanced" with respect to the housing, the anchor, or any other structure.

Even if the word "forward" appeared in the specification, it would be improper to import a limitation from one embodiment, particularly where the majority of the discussion does not specify any directionality.  It is indisputably improper to "read into a claim a limitation from a preferred embodiment, if that limitation is not present in the claim itself." *Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002).  Further, nothing in the file history addresses limiting the claims based on the direction the plunger moves in.  (*See, generally,* Ex. B.)  Thus, there is no basis in the claims or other intrinsic evidence to insert limitations.

BSC's construction simply inserts its proposed construction for "plunger" without construing the remainder of the phrase.  TAI agrees that the Court's construction of "plunger" should be inserted, but BSC has failed to propose any construction for this phrase beyond BSC's proposed construction of "plunger".

Dictionaries further support TAI's proposed construction, which allows movement in either direction.  For example, one dictionary offers a number of definitions for "slide": "to move along in continuous contact with a smooth or

slippery surface", "to glide or pass smoothly", "to slip easily or unobtrusively on or as if on a track or guide rail". (Ex. E at TAI002102.) None of these definitions dictates the direction of the sliding movement.

Thus, TAI's construction should be adopted because the claim itself includes no directionality and the specification confirms only that the plunger serves to release the anchor into the tissue, without mandating a singular direction of movement.

### D.    "plunger"

| "plunger" Proposed by BSC '190 Patent: claims 1, 4 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "a member adapted to slide [[forward]] within the housing of the delivery device when a force is applied to the member"<br><br>TAI notes that the district court in the ASTORA case included the word "forward" in its construction of the term "plunger". TAI does not believe the inclusion of this word is required and therefore proposes removing it from the construction. However, TAI does not believe inclusion or exclusion is dispositive. TAI proposes that the construction that more accurately fits the intrinsic evidence would not include this additional limitation. | "a member adapted to slide forward within the housing of the delivery device when a force is applied to the member" |

As set forth in Section V.C, nothing in the claims or specification supports limiting the direction of movement of the plunger. Importantly, even if the word "forward" ever appeared in relation to plunger (which it does not), limiting the claims to a disclosed embodiment would not be proper without a "clear disavowal" by the applicant. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358

1
2
3
4

(Fed. Cir. 2004) ("Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."); *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1055 (Fed. Cir. 2009) (refusing to narrow scope of claim language based up on specification).

5
6
7
8
9
10
11

Although the *ASTORA* court construed this term, neither party proposed that the movement of the plunger be limited to "forward". (Ex. C at 26.)  TAI proposed that "plunger" did not require construction and ASTORA argued that the construction for plunger be "a member adapted to slide forward and backward within the housing . . ." (*Id.*)  At the hearing, TAI's counsel emphasized that the plunger's directionality should not be included in the construction because the purpose of the "plunger" is to release or uncouple the anchor:

12
13
14

> "[W]e understand that the claim is saying that the anchor is advanced away from the housing . . . Then you use the plunger to get the anchor off of the housing . . . It pushes it – I don't know about forward.  'Forward' suggests a direction.  But it's definitely pushing it away, and it then [is] released or uncoupled.  The anchor is then released or uncoupled."

15
16
17

(Ex. D at 73:8-20.)  As detailed above, the specification supports this functionality without requiring a particular direction of movement for the plunger. *See* Section IV.C (hereby incorporated by reference).

18
19
20
21
22
23
24
25
26

Nothing in the specification or file history indicates a "clear and unambiguous" intent to limit the plunger to only a forward motion.  Further, because the proposed construction does not include a reference point for "forward", it is not clear what "forward" means.  Nothing states that the plunger must move in either direction exclusively to release the anchor—all that is required is that the anchor is released from the housing and inserted into the tissue through operation of the plunger (which is further discussed in the next section).  Because there is no basis to include the "forward" limitation, this Court should adopt TAI's proposed construction.

27
28

### E.   "said anchor being advanced away from said housing upon operation of said plunger"

| "said anchor being advanced away from said housing upon operation of said plunger" Proposed by BSC '190 Patent: claim 1 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "the anchor is advanced and released from the housing upon operation of said plunger" | "the anchor is advanced and released from the housing when the plunger is moved forward within the housing" |

The parties appear to agree as to the meaning of "said anchor being advanced away from said housing"—the only difference in the constructions is whether BSC's proposal for "upon operation of said plunger" should be used within this longer phrase. As above, TAI does not dispute that the construction for "upon operation of said plunger" would be inserted into this longer phrase, but TAI disputes that BSC's proposal is correct. Thus, for the reasons detailed in Section V.F below, TAI's construction of "upon operation of said plunger" is more accurate and should be used within this longer phrase.

### F.   "upon operation of said plunger"

| "upon operation of said plunger" '190 Patent: claim 1 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "when the plunger is moved in any direction within the housing" | "when the plunger is moved forward within the housing" |

The *ASTORA* court did not construe the smaller phrase "upon operation of said plunger" on its own, but construed the longer phrase discussed in the preceding section. (Ex. C at 23-24.) The construction for the full term was "the anchor is advanced and released from the housing when the plunger is moved within the housing". (*Id.*) TAI's proposed construction slightly modifies the latter portion of the construction (the part addressing "upon operation of said plunger" to note that the plunger can be moved in "any direction" within the housing. This is consistent with

both the claim and specification, neither of which indicates that the direction the plunger moves is limited.  *See* Section V.C-D (hereby incorporated by reference).

BSC's construction improperly imports a limitation on movement that is not present in the claims.  Further, neither the specification or file history mandates such a limitation.  It is improper to add limitations to a construction in these circumstances.  *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010).  Even the *ASTORA* court did not include "forward" when it construed the longer phrase.[3]  (Ex. C at 24.)  As noted with regard to the other "plunger" terms, BSC has repeatedly attempted to insert limitations on the direction of movement that are never discussed in the '190 Patent and are not included in the claims.  Thus, TAI proposes explicitly stating that "operation" of the plunger can include movement in any direction.  When this is inserted into the phrase discussed in Section V.E, the construction properly captures the purpose of the plunger within the claims—releasing the anchor into the tissue.  *See* Sections V.C-E.

Extrinsic evidence similarly does not support limiting the phrase to "forward" motion.  The word "operation" merely refers to "an act or instance, process or manner of functioning or operating" or a "process of a practical or mechanical nature".  (Ex. E at TAI002098.)  One dictionary defines "plunger" as "a piston-like reciprocating part moving within the cylinder of a pump or hydraulic device" (*id.* at TAI002100), again lacking any reference to direction.

Because neither intrinsic or extrinsic evidence supports limiting the direction of movement that constitutes "operation" of the plunger, this Court should adopt TAI's proposed construction of "upon operation of said plunger".

## VI.    CONCLUSION

For the foregoing reasons, TAI respectfully requests that the Court adopt TAI's proposed constructions for the disputed terms.

---

[3] Further, this attempt to add a limitation undermines BSC's argument that this Court should not conduct an independent claim construction analysis.

Dated: January 13, 2020

By: */s/ Sarah A. Pfeiffer*

Sarah A. Pfeiffer
Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
Seth H. Ostrow (*pro hac vice*)
Email: sho@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2020, I the foregoing was emailed to the persons listed below via the Court's CM/ECF notification system:

**FAEGRE BAKER DANIELS LLP**
David J.F. Gross (SBN 290951)
Nick P. Chan (SBN 286925)
david.gross@FaegreBD.com
nick.chan@FaegreBD.com

Michael Jaeger (SBN 219064)
michael.jaeger@FaegreBD.com

Timothy E. Grimsrud (*pro hac vice*)
Lauren J.F. Barta (*pro hac vice*)
Andrea Savageau (*pro hac vice*)
tim.grimsrud@FaegreBD.com
lauren.barta@FaegreBD.com
andrea.savageau@faegreBD.com

**HILL, FARRER & BURRILL LLP**
Jenner Tseng
Michael Turner
jtseng@hfbllp.com
mturner@hfbllp.com

*Attorneys of record for Defendants*

MEISTER SEELIG & FEIN LLP

By:___*/s/ Sarah A. Pfeiffer*_____
Sarah A. Pfeiffer