1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
Seth H. Ostrow (*pro hac vice*)
Email: sho@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff Tissue Anchor
Innovations, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tissue Anchor Innovations, LLC, | Case No.: 8:19-CV-00791-JVS-ADS |
| Plaintiff, | **PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| vs. | *Markman* Hearing: Not Set |
| Fountain Valley Regional Hospital and Medical Center, Los Alamitos Medical Center, and Boston Scientific Corporation, | Complaint Filed: April 30, 2019<br>Discovery Cut-Off: June 29, 2020<br>Pretrial Conference: Dec. 21, 2020<br>Trial Date: Jan. 26, 2021 |
| Defendants. | |

1

## **<u>TABLE OF CONTENTS</u>**

2    TABLE OF AUTHORITIES ...................................................................................ii

3    I.    INTRODUCTION .........................................................................................1

4    II.   PRIOR CLAIM CONSTRUCTION ORDER ................................................2

5    III.  TAI'S PROPOSED CONSTRUCTIONS OF DISPUTED TERMS .............8

6          A. The "plunger" Terms .........................................................................8

7          B. The "barb end" Terms......................................................................14

8    IV.   CONCLUSION ...........................................................................................18

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Altera Corp. v. PACT XPP Techs.*,
    AG, No. 14-CV-02868-JD, 2015 WL 4999952 (N.D. Cal. Aug. 21, 2015) ........... 3

4

*Bayer AG v. Biovail Corp.*,
    279 F.3d 1340 (Fed. Cir. 2002) ................................................................. 9

5

*Cont'l Circuits LLC v. Intel Corp.*,
    915 F.3d 788 (Fed. Cir. 2019), *cert. denied*, No. 19-571, 2019 WL 6689703 (Dec.
    9, 2019)................................................................................................ 9, 11

6

*Curtiss-Wright Flow Control Corp. v. Z & J Techs. GmbH*,
    563 F. Supp. 2d 1109 (C.D. Cal. 2007).................................................... 5

7

*Finjan, Inc. v. Symantec Corp.*,
    2017 WL 550453 (N.D. Cal. Feb. 10, 2017)........................................... 13

8

*Guardian Media Techs., Ltd. v. Acer Am. Corp.*,
    No. 6:10-CV-597, 2013 WL 1866901 (E.D. Tex. May 2, 2013).......................... 14

9

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
    690 F.3d 1318 (Fed. Cir. 2012) .............................................................. 17

10

*Jacobs v. CBS Broadcasting, Inc.*,
    291 F.3d 1173 (9th Cir. 2002)................................................................. 6

11

*JumpSport, Inc. v. Acad., Ltd.*,
    No. 6:17-CV-414-RWS-JDL, 2018 WL 4090471 (E.D. Tex. Aug. 28, 2018)..... 18

12

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
    790 F.3d 1298 (Fed. Cir. 2015) .............................................................. 12

13

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
    147 F. Supp. 2d 464 (W.D. Va. 2001)..................................................... 3

14

*Melendez v. Dayan*,
    No. CV176261-MWFMRWX, 2018 WL 2717872 (C.D. Cal. Mar. 30, 2018)...... 5

15

*Neev v. Alcon Labs., Inc.*,
    No. CV1500336JVSJCGX, 2016 WL 9051170 (C.D. Cal. Dec. 22, 2016) ... 3, 4, 6

16

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ............................................................................. 14

17

*Paltalk Holdings, Inc. v. Microsoft Corp.*,
    No. CIV.A. 2:06CV367-DF, 2008 WL 4830571 (E.D. Tex. July 29, 2008)........... 3

18

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ............................................................................. 4

19

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008)..................................................... 3

*RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003) ........................................................... 7, 18

*ScriptPro LLC v. Innovation Assocs., Inc.*,
  833 F.3d 1336 (Fed. Cir. 2016) ............................................................... 11

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  574 U.S. 318, 135 S. Ct. 831 (2015) ........................................................ 3

*Tissue Anchor Innovations LLC v. ASTORA Women's Health, LLC*,
  No. 2:15-cv-0473-RGD-DEM, D.I. 70 (E.D. Va. July 6, 2016) ............................ 3

Plaintiff Tissue Anchor Innovations, LLC, ("TAI") submits this Responsive Claim Construction Brief regarding the proper construction of terms in U.S. Patent No. 6,506,190 (the "'190 Patent", Ex. A[1]) in response to the brief Boston Scientific Corporation ("BSC") filed on January 13, 2020 (D.I. 61).

## I. INTRODUCTION

The terms TAI proposed for the Court to construe were selected to clarify issues present in this case. These terms or phrases differed from the claim terms the previous court construed, which is unsurprising given that the issues in the two cases differ due primarily to differences in the designs of the products accused of infringement. Indeed, merely adopting the constructions of the claim terms previously construed leaves ambiguities in the present case that the jury would need to resolve on its own.

BSC confirmed that these ambiguities in the prior constructions will cause further disputes in this case by setting forth its non-infringement positions in its opening brief (D.I. 61). BSC has thereby demonstrated the need for this Court, in accordance with precedent, to conduct its own, independent claim construction analysis of the disputed terms, even while affording some deference to the prior claim construction order.

Moreover, TAI's proposal of different phrases for construction than the prior court considered renders both collateral and judicial estoppel inapplicable. If anything, the arguments BSC raised in its opening brief illustrate why many district courts have concluded that estoppel does *not* preclude a later court from taking a second look at claim construction—sometimes an imperfect construction does not raise issues that affect the ultimate outcome of case. For example, in the previous litigation, the importation of the word "forward" into the construction of the "plunger" terms, over TAI's argument against such an inclusion, did not affect the infringement or invalidity analysis in that case. As BSC's noninfringement arguments highlight,

---

[1] Exhibits A-E were attached to the previously filed Declaration of Sarah Pfeiffer. (D.I. 60-1.) All exhibits from F forward are attached to the concurrently filed Second Declaration of Sarah Pfeiffer.

however, the inclusion of this limitation here raises ambiguities this Court should resolve before sending the case to a jury, either by adopting the clarification TAI seeks or by eliminating the word "forward" from the construction altogether.

Similarly, BSC's arguments regarding its non-infringement position for the "barb end" terms demonstrate that a proper construction will clarify the requirements for infringement for the jury: infringement requires only the presence of the claimed elements, not any additional structural elements that may be present in certain embodiments.

Ultimately, BSC's product should be found to infringe the '190 Patent even if the Court simply adopted the prior constructions without considering the clarifications TAI seeks. The Court would miss an opportunity, however, to clarify these and other ambiguities which would simplify the task for the jury.

TAI's proposals, which account for the work and opinions in the previous claim construction order, clarify the issues that BSC has brought to the forefront in its opening claim construction brief. Because uniformity would not be served due to the unique facts at issue in this case, but judicial economy would be served by reevaluating claim construction, collateral estoppel should not apply. And because TAI was not successful in advocating for its prior proposals and its positions now are consistent with its proposals then, judicial estoppel similarly does not apply. Finally, because TAI's proposals are most consistent with the most important evidence—the claims and specification—this Court should conduct an independent claim construction review and adopt TAI's proposed clarifying constructions for the disputed terms.

## II.   PRIOR CLAIM CONSTRUCTION ORDER

Another district court previously construed certain terms in the '190 Patent in relation to a family of ASTORA products called the "MiniArc". *See Tissue Anchor Innovations LLC v. ASTORA Women's Health, LLC*, No. 2:15-cv-0473-RGD-DEM, D.I. 70 (E.D. Va. July 6, 2016) ("*ASTORA*") (claim construction order previously

attached as Ex. C).  As detailed in TAI's opening brief, however, the prior constructions leave open ambiguities with relation to the products accused in this Action—the Solyx products—that this Court now has the opportunity to clarify.  It would serve the interests of judicial economy for this Court to weigh in on ambiguities that were not present in the prior litigation, but are present here.

The *ASTORA* court's constructions are not necessarily binding on this proceeding—the Supreme Court has noted that a prior claim construction may "*sometimes* be binding" and "*sometimes* will serve as persuasive authority."  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 135 S. Ct. 831, 839–40 (2015) (emphasis added).  Many district courts—including this Court—have declined to find that collateral estoppel precludes a district court from independently conducting a claim construction analysis in a later case.  *See, e.g., Neev v. Alcon Labs., Inc.*, No. SACV1500336JVSJCGX, 2016 WL 9051170, at *13 (C.D. Cal. Dec. 22, 2016), *aff'd sub nom. Neev v. Alcon Lensx Inc.*, 774 F. App'x 680 (Fed. Cir. 2019); *Altera Corp. v. PACT XPP Techs.*, AG, No. 14-CV-02868-JD, 2015 WL 4999952, at *11 (N.D. Cal. Aug. 21, 2015) (the conclusion that a claim construction order is sufficiently final for preclusion "is doubtful in light of the Supreme Court's recent comment that prior claim constructions will only 'sometimes' result in issue preclusion"); *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 965-68 (N.D. Cal. 2008) ("The lesson from Finisar is that additional litigation can refine and sharpen the courts' understanding of an invention and that a second court should not defer to a prior court's claim construction without questioning its accuracy."); *Paltalk Holdings, Inc. v. Microsoft Corp.*, No. CIV.A. 2:06CV367-DF, 2008 WL 4830571, at *4 (E.D. Tex. July 29, 2008) ("the Court declines to apply [collateral estoppel] to bind this Court to Judge Alsup's claim construction order"); *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 470 (W.D. Va. 2001), *dismissed sub nom. Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 33 F. App'x 496 (Fed. Cir. 2002).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Indeed, BSC cited a case from this Court that highlights why this Court should reach its own opinions on claim construction now. (D.I. 61 at 19.) BSC cited *Neev*, 2016 WL 9051170 at *12, to set forth the standard three factors for evaluating whether collateral estoppel applies in the Ninth Circuit. (*Id.*) In *Neev*, this Court found that "collateral estoppel could apply" because the Ninth Circuit criteria were satisfied, but the Court ultimately "***decline[d] to apply the doctrine*** because doing so would promote neither uniformity nor judicial efficiency." *Neev*, 2016 WL 9051170 at *13 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)) (emphasis added). Similarly here, the policy considerations of uniformity and efficiency will not be served by declining to reevaluate the prior rulings.

In pages 6 to 9, BSC set forth its apparent non-infringement positions based on the *ASTORA* claim constructions. (D.I. 61 at 6-9.) As will be addressed in further detail with regard to specific terms, these arguments serve to highlight the ambiguities which would result from adopting the prior constructions without independent consideration. Briefly and by way of example, however, BSC argues that the "trailing" end of the "mesh carrier" includes barbs, not the "leading" portion. (D.I. 61 at 7.) BSC fails to appreciate, however, that the entire "mesh carrier" in the Solyx product represents only the "leading" portion as claimed, and thus the barbs are in fact placed on such leading portion of the "anchor".

TAI's proposed construction of the larger claim phrase here thus helps make clear to a jury that claim limitations are a minimum—there is no requirement for the anchor to have any additional "ends" or "portions" beyond the barb end or leading portion. BSC also argues that the "handle" of its device moves "backward. (*Id.*) But this is the problem with including the word "forward" in the construction— forward relative to what?  The doctor must pull the handle toward themselves, thus, it could be considered "forward" for the doctor. Further, even if "forward" clearly meant relative to the tissue, there is nothing in the claims or specification that would preclude the plunger from also moving backward. As detailed in TAI's opening

4

brief and below, there is nothing in the claims or specification that dictates the directionality of the plunger, nor is there a clear disavowal of movement in either direction, as long as the plunger serves to release the anchor into the tissue.

Again, BSC's cited cases explain why this Court should address the ambiguities that BSC's non-infringement positions present. "Claim constructions are narrowly tailored to the infringement and validity dispute in particular cases." *Curtiss-Wright Flow Control Corp. v. Z & J Techs. GmbH*, 563 F. Supp. 2d 1109, 1126 (C.D. Cal. 2007). The *Curtiss-Wright* court declined to apply the Federal Circuit's claim construction to a particular term in later litigation because the disputed issue was not relevant to the infringement claims in the prior litigation. *Id.* The same is true here—because of differences between the *ASTORA* device (an exemplary product brochure for an accused ASTORA device is attached as Exhibit G) and BSC's Solyx product, these ambiguities in the construction were not necessary to resolution of the *ASTORA* case, but are necessary to this case.[2] Merely adopting the prior constructions will not provide uniformity because, as discussed below, the differences between the accused products meant that these clarifications were not necessary in the previous litigation. Further, if this Court conducts an independent review of the issues that TAI has briefed, it could lead to significant judicial economies by narrowing the parties' disputes and clarifying certain infringement positions.

Although this Court should use its discretion and decline to apply collateral estoppel as detailed above, BSC cannot meet its burden to establish all three factors. *See Melendez v. Dayan*, No. CV176261-MWFMRWX, 2018 WL 2717872, at *10 (C.D. Cal. Mar. 30, 2018) (citing *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173,

---

[2] TAI previously stated it was "bound" by the prior constructions (D.I. 24 at 16), but TAI did not propose any of the same terms for construction that the *ASTORA* court considered (D.I. 58)—BSC proposed those terms. Further, as BSC's briefing shows, BSC has raised issues relating to its non-infringement positions that demonstrate the prior constructions are not sufficient for the facts in this case. Thus, consistent with the precedent above, TAI seeks construction of different phrasings to clarify the prior Court's construction, while still according due deference to the prior order.

1177 (9th Cir. 2002)) ("the party asserting collateral estoppel bears the burden of establishing the[] requirements").  BSC cannot establish the first factor, that "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated".  *Neev*, 2016 WL 9051170 at *12.  TAI proposed different phrases than the *ASTORA* court addressed, as detailed in the opening brief (D.I. 60; *see also* Table 1, *supra*).  Further, the nature of the dispute is different because, as noted, the *ASTORA* accused products did not raise the issues that that BSC details in its opening brief.

Similarly, BSC's judicial estoppel argument (D.I. 61 at 19-21) fails because TAI did not prevail—the *ASTORA* court did not adopt TAI's proposed construction for any term disputed here.  Table 1 below shows TAI's prior proposal and the *ASTORA* court's construction for terms that were previously proposed.  The other terms or phrases were not proposed to the *ASTORA* court as presented here (further demonstrating that the issues are not identical, as discussed above).

**TABLE 1: *ASTORA* Proposed vs. Adopted Constructions**

| TAI's *ASTORA* Proposed Construction | *ASTORA* Court's Adopted Construction |
|---|---|
| "barb end . . . with a tip shaped to penetrate soft tissue . . ." | |
| "the end portion of the tissue anchor having one or more barbs positioned thereon, the end being sufficiently sharp or pointed to easily penetrate soft tissue when being inserted therein" (Ex. F at 4) | "the leading portion of the tissue anchor having at least one or more barbs positioned thereon" and declined to construe "with a tip shaped to penetrate soft tissue" (Ex. E at 17) |
| "said anchor being advanced away from said housing upon operation of said plunger" | |
| No construction necessary<br><br>If deemed necessary to construe: "the anchor is released from the housing when the plunger is moved within the housing" (Ex. F at 9) | "the anchor is advanced and released from the housing when the plunger is moved within the housing" (Ex. E at 24) |
| "plunger" | |
| No construction necessary | "a member adapted to slide forward within the housing of the delivery |

| If deemed necessary to construe: "a member adapted to slide within the housing" (Ex. F at 11) | device when a force is applied to the member" (Ex. E at 27) |
|---|---|

"The doctrine of judicial estoppel is that where a party *successfully* urges a particular position". *RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1262 (Fed. Cir. 2003) (emphasis in original) (declining to apply judicial estoppel where the party was not successful). As Table 1 makes clear, TAI was not successful in convincing the *ASTORA* court to adopt its prior proposed constructions, and there is no basis to apply judicial estoppel.

In view of the differences between the products accused in *ASTORA* and the Solyx products accused here, along with BSC's arguments for noninfringement based on the prior constructions, there are now ambiguities in the application of the prior constructions that justify this Court conducting its own claim construction evaluation. The MiniArc from the ASTORA case functioned in a different way: the doctor pushed down on two finger grips, causing an internal plunger to slide toward the tissue (thus, from one perspective, "forward") and advance the anchor away from the housing and into the tissue. Thus, the inclusion of "forward", with or without "backward", made no difference to the infringement analysis. The figures below illustrate this.



Figure 1: MiniArc Handle



Figure 2: MiniArc Deployment

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Reevaluation will also serve judicial economy by clarifying these ambiguities and narrowing disputes.  Further, because TAI did not prevail in the *ASTORA* case because the prior court did not adopt its proposed constructions for any of the terms in dispute here, judicial estoppel does not apply.  Because neither collateral estoppel nor judicial estoppel is appropriate, this Court should conduct an independent claim construction analysis of the disputed terms in the '190 Patent.

## III.   TAI'S PROPOSED CONSTRUCTIONS OF DISPUTED TERMS

### A.   The "plunger" Terms

| |
| --- |
| "a plunger slidably positioned in said housing"<br>Proposed by TAI<br>'190 Patent: claim 1 |
| "plunger"<br>Proposed by BSC<br>'190 Patent: claims 1, 4 |
| "said anchor being advanced away from said<br>housing upon operation of said plunger"<br>Proposed by BSC<br>'190 Patent: claim 1 |
| "upon operation of said plunger"<br>Proposed by TAI<br>'190 Patent: claim 1 |

The primary dispute regarding the "plunger" term appears to stem from whether the claim limits the "plunger" to only a forward motion.  Nothing in the most relevant evidence—the claims and specification—mandates such a limitation.  Looking first to the claims, no limitations on the direction the plunger must move in appear in the claims.  (*See, e.g.,* '190 Patent at claim 1.)  Dependent claim 17, while not asserted, reads that the "anchor shaft is adjustable both in a forward direction and in a rearward direction", further supporting TAI's argument that the plunger is not limited to movement in a single direction.  The specification describes the motion of the plunger using the words "upward" and "downward" (*id.* at 14:50) but does not use the word "forward".  (*See, generally,* '190 Patent.)  But even if the specification did describe the plunger's movement using the word "forward", it would be

1   improper to "read into a claim a limitation from a preferred embodiment, if that

2   limitation is not present in the claim itself."  *Bayer AG v. Biovail Corp.*, 279 F.3d

3   1340, 1348 (Fed. Cir. 2002); *see also Cont'l Circuits LLC v. Intel Corp.,* 915 F.3d

4   788, 797 (Fed. Cir. 2019), *cert. denied*, No. 19-571, 2019 WL 6689703 (U.S. Dec. 9,

5   2019) ("To avoid improperly importing limitations into the claims, 'it is important to

6   keep in mind that the purposes of the specification are to teach and enable those of

7   skill in the art to make and use the invention . . .'") (citation omitted).  Thus, there is

8   no basis to import a limitation that is not present in either the asserted claims or

9   specification.

10          BSC argues that the claims' and specification's use of the word "advance"

11   provides the support for the word "forward" to limit the direction of the plunger's

12   movement.  BSC fails to appreciate that the word "advance" is operative on the

13   **_anchor_**, not on the plunger: "said **_anchor is advanced_** away from said housing".

14   ('190 Patent at claim 1 (emphasis added throughout unless otherwise noted).)  The

15   specification describes that the plunger's function is to allow the anchor to be

16   advanced into soft tissue.  ('190 Patent at 2:62-64 (the plunger serves "to assist

17   **_advancing the anchor_** into a tissue").)  BSC includes the following string of

18   citations (D.I. 61 at 13) that further emphasize that "advance" describes the action of

19   the anchor or the shaft, not the plunger:

- 6:9-11 ("allows plunger 5 to **_advance anchor_** 20 into a tissue")

- 9:27-55/9:41-46 ("plunger 5 is advanced, forcing anchor 20 into tissue. When **_anchor 20 has advanced_** . . .")

- 10:67-11:2 ("device 1 is advanced through the operative port of the endoscope thereby **_advancing the anchor_** . . . Plunger 5 is depressed and **_advances anchor_** 20")

- 16:34-36 ("**_shaft 120 is advanced_** by operation of plunger 5") (a shaft is an optional element of an anchor, not claimed in the disputed claims)

- 17:2-8 ("**_shaft 120 is advanced_** by the plunger")

- 19:12-14 ("Generally, **_anchor 20 will be_** . . . **_advanced_** through the scope, using a rigid or flexible plunger 5 (not shown)")

9

1

2

3

4

5